IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARIK RUDICH,

Plaintiff,

v.

METRO GOLDWYN MAYER STUDIO, INC., SONY/ATV MUSIC PUBLISHING LLC, and CINRAM, INC.,

Defendants.

OPINION and ORDER

08-cv-389-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This civil suit for copyright infringement is before the court on defendant Metro Goldwyn Mayer Studio, Inc.'s motion to dismiss or stay the case pursuant to the first-to-file rule or transfer venue to the Central District of California under 28 U.S.C. § 1404(a). Metro Goldwyn Mayer contends that this action should be stayed or dismissed because it is duplicative of a lawsuit that Metro Goldwyn Mayer filed first in the Central District of California. In the alternative, defendant asks the court to transfer the case, pointing out that the plaintiff has no connection to the Western District of Wisconsin and has chosen this district solely for the speed of its docket and expertise in intellectual property law.

In an order dated October 2, 2008, I stayed defendant Metro Goldwyn Mayer's motion to dismiss, stay or transfer the case to allow defendants Sony/ATV Music Publishing

LLC and Cinram, Inc. an opportunity to respond to the motion. Dkt. #38. Defendants Sony/ATV and Cinram have now responded, stating that they do not oppose defendant Metro Goldwyn Mayer's motion. Therefore, the stay will be lifted and the matter decided.

I will deny defendant Metro Goldwyn Mayer's motion to stay or dismiss the case pursuant to the "first-to-file" rule. The present action for copyright infringement against multiple parties is not sufficiently duplicative of the suit filed first in the Central District of California. This case involves different claims and parties. At the same time, I will grant the motion to transfer the case because this forum is inconvenient to all parties, while the Central District of California is convenient for defendant Metro Goldwyn Mayer and because it would serve the interests of justice to transfer the case to that district, in light of the fact that a related case is pending there that is likely to be consolidated with this case upon transfer.

From the complaint and the documents submitted by the parties in connection with the pending motion, I draw the following facts, solely for the purpose of deciding this motion.

## FACTS

### A. Parties

Plaintiff Arik Rudich is a citizen and resident of Israel. Defendant Metro Goldwyn Mayer is a corporation organized under the laws of Delaware with its principal place of

business in Los Angeles, California. It does some business in Wisconsin. Defendant Metro Goldwyn Mayer is a successor-in-interest to Cannon Group, Inc., the California corporation that produced the Snow White movie that is at issue in this suit.

Defendant Sony/ATV is a Delaware limited liability corporation with its principal place of business in Nashville, Tennessee. It is an "international corporation transacting international business" and has acted as an agent to defendant Metro Goldwyn Mayer.

Defendant Cinram is a Delaware corporation with its principal place of business in Indiana. Like defendant Sony/ATV, defendant Cinram is an "international corporation transacting international business." It has acted as a business affiliate of defendant Metro Goldwyn Mayer.

B. Background to Litigation

Starting April 30, 2008, plaintiff's counsel began sending letters to defendant Metro Goldwyn Mayer's counsel, alleging that defendant was infringing plaintiff's copyrights in songs he wrote for a 1987 movie version of Snow White. In the first letter, plaintiff's counsel requested that defendant Metro Goldwyn Mayer stop distributing the movie, destroy its DVD copies and disgorge publishing royalties collected in relation to the movie. In addition, he warned that plaintiff would file suit if defendant Metro Goldwyn Mayer failed to settle with plaintiff. In the course of two months, Plaintiff's counsel contacted defendant Metro Goldwyn Mayer's counsel several times regarding the alleged infringement and issued two press releases on the matter. In an email sent June 11, 2008, plaintiff's counsel made

a settlement offer that would expire June 22, 2004. Defendant Metro Goldwyn Mayer did not accept the offer.

On June 24, 2008, defendant Metro Goldwyn Mayer filed an action in the Central District of California for declaratory judgment, seeking declarations that: (1) plaintiff has no copyrights in the songs in the 1987 Snow White movie; (2) plaintiff has no right to publishing royalties for the movie; and (3) that any infringement claim that plaintiff may have against it is barred by the statute of limitations or laches. The action is set for trial on June 2, 2009.

C. Present Lawsuit

On the same day that defendant filed suit in the Central District of California, plaintiff's counsel mailed a complaint to be filed in this court. On July 7, 2008, the court received plaintiff's complaint and it was docketed. Plaintiff's complaint asserts eight causes of action related to alleged infringement of plaintiff's copyrights in songs he wrote for the Snow White movie. Plaintiff asserts six counts of infringement against defendant Metro Goldwyn Mayer for their involvement in the reproduction and distribution of Snow White DVDs and synchronization of plaintiff's music to those DVDs. In addition, plaintiff asserts one count of infringement against defendant Cinram for its manufacture of DVDs pursuant to defendant Metro Goldywn's orders and one count of illegal collection of royalties against defendants Metro Goldwyn Mayer and Sony/ATV for their involvement in collecting

royalties he should have received in relation to the Snow White DVD sales. No trial has been scheduled in this case, pending resolution of this motion.

D. Potential Witnesses

When Snow White was produced, Menachem Golan and Yoram Globus were two Hollywood producers who held a controlling interest in the Cannon Group. Golan and Globus had their main office in Los Angeles, California. (Plaintiff asserts in his brief that Golan and Globus now live in Israel.)

Itzik Kol was general manager of a production facility in Israel owned by Golan and Globus. At Golan's direction from Los Angeles, Kol negotiated an agreement with plaintiff to prepare the songs for the Snow White movie. No written agreement was ever prepared. (Plaintiff asserts that Kol resides in Israel.)

Trained personnel employed by defendant Cinram allegedly reviewed documentation related to the chain of title of copyrights in the songs found in the Snow White movie. (Plaintiff asserts in his brief that defendant Cinram must have "due diligence" material in its headquarters in Indiana.)

(Defendant Metro Goldwyn Mayer suggests that some of its former employees and individuals working for the producers of Snow White might have relevant information and live in California.)

OPINION

A. Dismissal or Stay Under First-to-File Rule

Defendant Metro Goldwyn Mayer contends that plaintiff's infringement suit should be dismissed or stayed because defendant filed a declaratory judgment suit first in the Central District of California. When a federal suit is duplicative of a parallel action already pending in another federal court, the suit may be stayed or dismissed in the interest of wise judicial administration. See, e.g., Serlin v. Arthur Andersen & Co., 3 F.3d 221, 223-24 (7th Cir. 1993). In determining whether actions should be dismissed, stayed or adjudicated when similar litigation is pending in other federal courts, for reasons of "wise judicial administration," courts often apply the "first to file" presumption, as defendants urge the court to do in this case. Under the presumption, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised overlap substantially. Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 603 (5th Cir. 1999); Asset Allocation & Management Co. v. Western Employers Ins. Co., 892 F.2d 566, 573 (7th Cir. 1989) (rebuttable presumption exists that first-to-file case should proceed and second case abate).

Although the timing of a lawsuit is one factor to consider when deciding whether to adjudicate a second-filed action, the Court of Appeals for the Seventh Circuit has stated repeatedly that this circuit has never adhered rigidly to the "first-to-file rule." Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 750 (7th Cir. 1987). Therefore, under the right circumstances, a court in which the second action is filed may

decide to consider the claims, even if they overlap with those included in an earlier-filed action. Blair v. Equifax Check Services, 181 F.3d 832, 838 (7th Cir. 1999) (noting that no "mechanical rule" governs handling of overlapping cases and that judge in second-filed action "may conclude that it is a superior vehicle and may press forward").

I will not dismiss or stay this case. The claims, parties and available relief in this infringement suit and those in the declaratory judgment action filed in the Central District of California do not overlap. This lawsuit includes claims against defendants Sony/ATV and Cinram, who are not parties to the California action. Defendant Metro Goldwyn Mayer contends that plaintiff may assert his claims against these entities as third-party claims in the first-filed action. However, the standard is not whether plaintiff may tack on claims or defendants to the first-to-file case to cover every aspect of the second-filed case; rather, it is whether the "claims, parties, and available relief do not significantly differ between the two actions." Serlin, 3 F.3d at 223-24. Even assuming that plaintiff's infringement claims against defendant Metro Goldwyn Mayer are compulsory counterclaims that "must" be raised in that suit, nothing requires plaintiff to name third-party defendants in that lawsuit.

Moreover, I am not blind to the circumstances of the parties' filings. Defendant Metro Goldwyn Mayer filed its suit for declaratory judgment immediately after settlement negotiations had ended and shortly after a similar copyright infringement lawsuit brought against it by a different plaintiff was granted leave to proceed in forma pauperis in this court. The first-to-file rule should not be applied simply to reward the fastest filer or encourage

unseemly races to the courthouse. Tempco, 819 F.2d at 750. Defendant Metro Goldwyn Mayer's motion to stay or dismiss this case under the first-to-file rule will be denied.

B. Transfer to the Central District of California

Although I will not stay or dismiss this case, I will transfer the case pursuant to 28 U.S.C. § 1404(a), as defendant Metro Goldwyn Mayer has requested. Transfer of a case under § 1404(a) is appropriate when (1) venue is proper in the transferor district and (2) the transferee district is one in which the action could have been brought. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986). The parties do not deny that venue is proper here or that the action could have been brought in the Central District of California.

In weighing a motion to transfer venue brought pursuant to 28 U.S.C. § 1404(a), a court must consider whether the transfer serves the convenience of the parties and witnesses and will promote the interest of justice. 28 U.S.C. 1404(a); Coffey, 796 F.2d at 219-20. Appropriate factors to consider when making this determination include the situs of material events, ease of access to sources of proof and the plaintiff's choice of forum. Harley-Davidson, Inc. v. Columbia Tristar Home Video, 851 F. Supp. 1265, 1269 (E.D. Wis. 1994); Kinney v. Anchorlock Corp., 736 F. Supp. 818, 829 (N.D. Ill. 1990). "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," Coffey, 796 F.2d at 221, such as whether a transfer would help the litigants receive a speedy trial and whether a transfer would facilitate consolidation of related cases. Id. In this case, the factors weigh in favor of transfer.

1. Plaintiff's choice of forum

Plaintiff's choice of forum will be given little deference. The general rule that a plaintiff's choice of forum deserves deference applies only when a plaintiff is litigating in his home forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981). The rationale behind the rule is that it is reasonable to assume that a plaintiff chooses a home forum because it is convenient. Id. Such an assumption is much less reasonable when the plaintiff is foreign, so a foreign plaintiff's choice of forum is entitled to much less deference. Id.; Kamel v. Hill-Rom Co., 108 F.3d 799, 803 (7th Cir. 1997); see also Chicago, Rock Island & Pacific Railroad Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955) (plaintiff's choice of forum given less deference if few operative facts occurred in that forum).

Although plaintiff is a citizen and resident of Israel, he argues that this forum should be treated as his "home forum" and he should get special deference. Plaintiff points to certain treaties between the United States and Israel regarding international copyright protection, including the Berne Convention, the Trade Agreement on Trade Related Aspects of Intellectual Property Rights, the Treaty of Friendship, Commerce and Navigation and the Israel Free Trade Agreement. In addition, plaintiff cites Irish National Insurance Company v. Aer Lingus Teoranta, 739 F.2d 90 (2d Cir. 1984), and Bigio v. Coca-Cola Co., 448 F.3d 176 (2d Cir. 2006), to support his position. However, the treaties and cases that plaintiff cites relate to the treatment of foreign plaintiffs when the question is one of forum non conveniens, not of transfer under § 1404. The treaties say nothing about the right of a foreign plaintiff to choose any forum in the United States, instead requiring only that such

plaintiffs be afforded "national treatment" with respect to access to the courts. Likewise, the cases cited recognize that a foreign plaintiff's choice to file suit within the United States may be given deference in the context of forum non conveniens. Irish National Insurance, 739 F.2d at 91-92 (in light of United States-Ireland Friendship Treaty, court should have applied same forum non conveniens standard to foreign plaintiff as applied to U.S. citizen); Bigio, 448 F.3d at 179 (in determining forum non conveniens, court should have given deference to foreign plaintiff's choice of forum because it was for legitimate and substantial reasons). However, in the context of forum non conveniens, the question is whether a *foreign* court provides a more convenient forum, Hyatt International Corp. v. Coco, 302 F.3d 707, 717-18 (7th Cir. 2002), while under § 1404(a), the question is whether a different court *within the nation* is more convenient.

Perhaps plaintiff's argument is that, to be given "national treatment," he must be given a "home" forum within the United States, as United Stated citizens typically have. I disagree. If plaintiff were correct, a foreign plaintiff would have the right to choose a forum at whim, a right not even United States citizens enjoy. Under Piper, the § 1404 choice of forum analysis is tied to *actual convenience*. Whatever right to "national treatment" plaintiff may have is limited to the right to a forum within the nation, as the cases he cites suggest. Thus, plaintiff's choice of forum deserves little deference.

2. Convenience of the parties and witnesses

Next, this forum is not convenient for any party or witness, while the Central District of California is clearly convenient to defendant Metro Goldwyn Mayer, which has its principal place of business there. As for convenience to witnesses, at this stage it appears to be a wash. Neither party has identified with certainty any witnesses located either in this forum or in the Central District of California. Although some of the material events occurred in California, defendant offers nothing but speculation regarding whether witnesses may be found there.

3. Interest of justice

The interest of justice tips the scale in favor of transfer. Defendant Metro Goldwyn Mayer has filed a related case in the Central District of California and consolidation of the two cases seems likely. Judicial economy favors facilitating such consolidation. Moreover, there is no reason to believe that the Central District of California will take any longer to bring this case to trial or disposition in the likely event that the cases are consolidated. Trial may occur as soon as June 2009, when his first-filed case goes to trial. Even if the cases are not consolidated, plaintiff has given no reason to believe that the Central District of California would not be able to set a trial date in or near the same time period that this court could offer.

Plaintiff points to two reasons suggesting that transfer does not promote the interest of justice: the local rules in the transferee district are more cumbersome to him because he will be required to hire local counsel or appear in person at motion hearings in that court;

and this court's expertise in intellectual property law better equips it to handle this case. As for the first reason, to the extent the local rules of the Central District of California are cumbersome for plaintiff, it is more a function of his decision to file a lawsuit halfway across the world than the rules themselves, which simply fail to accommodate the special needs created by his decision. Little weight will be given to this concern of plaintiff's. No weight will be given to the second reason because there is no basis to believe that the Central District of California (home to Hollywood) is less qualified than this court to address issues related to copyright law.

I conclude that the factors to be considered in ruling on a motion for a change of venue weigh in defendant's favor. This district is not convenient to any party while the Central District of California is clearly convenient to defendant Metro Goldwyn Mayer. The interests of justice are better served by transferring this case because transfer will facilitate consolidation with a related case already pending in that district. Therefore, defendant Metro Goldwyn Mayer's motion to transfer venue will be granted and the case will be transferred to the Central District of California.

ORDER

IT IS ORDERED that

1. The stay is LIFTED on defendant Metro Goldwyn Mayer's motion to dismiss or stay the case pursuant to the first-to-file rule or transfer the case to the Central District of California.

2. Defendant Metro Goldwyn Mayer's motion to dismiss or stay the case pursuant to the first-to-file rule is DENIED.

3. Defendant Metro Goldwyn Mayer's motion to transfer the case pursuant to 28 U.S.C. § 1404 is GRANTED. The clerk of court is directed to transmit the case file to the United States District Court for the Central District of California.

Entered this 22nd day of October, 2008.

BY THE COURT:

/s/

________________________________
BARBARA B. CRABB
District Judge